**Affirmed and Opinion Filed December 22, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-01348-CR

### DETRICK BLAIR DEAN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-82171-2015**

## MEMORANDUM OPINION
Before Justices Myers, Nowell, and Evans
Opinion by Justice Myers

Appellant Detrick Blair Dean pleaded guilty to indecency with a child by contact and, following a punishment hearing, the trial court sentenced him to ten years in prison. In two issues, appellant argues ineffective assistance of trial counsel and that his plea of guilty was involuntary. We affirm.

### DISCUSSION

### 1. Ineffective Assistance of Counsel

In his first issue, appellant argues defense trial counsel provided ineffective assistance by failing to ask the trial court to withdraw his guilty plea after appellant "repeatedly denied acting with the required sexual intent."

To prove a claim of ineffective assistance of counsel, appellant must show (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

Appellant has the burden of establishing both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697. Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). In the rare case in which trial counsel's

ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. However, "[i]f trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava*, 415 S.W.3d at 308 (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)). When, as in this case, the record on appeal is silent regarding counsel's actions, we may not speculate to find trial counsel ineffective. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Before a plea of guilty may be accepted by a trial court, the plea must be voluntarily and freely given by a defendant who is mentally competent. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(b). "The constitutional validity of a guilty plea made upon the advice of counsel depends on whether counsel's performance was reasonably competent, rendering a defendant effective representation during the particular proceedings." *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991). "Counsel's advice can provide assistance so ineffective that it renders a guilty plea involuntary." *Ex parte Moussazadeh*, 361 S.W.3d 684, 688 (Tex. Crim. App. 2012). "A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel," and "[a] defendant's decision to plead guilty when based on erroneous advice of counsel is not done voluntarily and knowingly." *Id*. at 689; *see also Ex parte Harrington*, 310 S.W.3d 452, 458–59 (Tex. Crim. App. 2010).

The record shows appellant pleaded guilty without a plea bargain agreement to the offense of indecency with a child by contact, pursuant to count IV of the indictment.[1] This count alleged that appellant intentionally and knowingly, with the intent to arouse or gratify the sexual desire of any person, engaged in sexual contact by touching part of the genitals of the complainant, a child younger than seventeen years of age and not the spouse of appellant, by means of part of appellant's hand. *See* TEX. PENAL CODE ANN. § 21.11.

Prior to accepting appellant's plea, the trial court confirmed with appellant that there was no plea bargain agreement, that appellant wanted the trial court to assess punishment, and the court admonished appellant on the full range of punishment for the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1), (2). Appellant told the court he was pleading guilty because he was guilty, that his plea was entered freely and voluntarily, and that no one promised him anything or threatened him to get him to plead guilty. Appellant told the trial court he fully understood the proceedings that day and the paperwork and plea agreement form he had signed. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(b). Appellant also told the court he had had adequate time to discuss the facts of the case with his counsel and was fully satisfied with his representation.

During the plea hearing, and before accepting appellant's guilty plea, the trial

---

[1] The State abandoned the other three counts of the indictment.

court also admitted into evidence State's exhibit 1, which included the plea agreement form (stating it was an open plea); the written admonishments; appellant's waiver of rights; his judicial confession stating he admitted to committing the offense of indecency with a child by contact as charged in the indictment; and the certification of appellant's right to appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a). The State questioned appellant while he was under oath regarding whether he understood that by pleading guilty, if he were not a citizen of the United States, his guilty plea could cause him to be deported, denied reentry into the country, or denied citizenship. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4). The State also asked appellant whether he was pleading guilty freely and voluntarily or if anyone pressured him to plead guilty. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(b). The relevant portion of the record reads as follows:

> Q. And I just need to say, even though you were born in the U.S., that you understand that by pleading guilty to a criminal offense, if you were not a citizen of the U.S., you could potentially be subject to deportation, denial of naturalization, or refusal of reentry into this country?
>
> A. Yes, sir.
>
> Q. And you committed the acts exactly as they're alleged in the State's indictment, in Count Four; is that correct?
>
> A. Yes, sir.
>
> Q. You are pleading guilty freely and voluntarily? No one, no person, has put any pressure on you whatsoever to get you to plead guilty?
>
> A. No, sir.

The trial court accepted appellant's guilty plea and found it had been entered freely

and voluntarily but deferred a finding of guilt until after it heard punishment evidence from both sides.

The State then questioned appellant further, and appellant said he did not understand that he would be required to register as a sex offender pursuant to Chapter 62 of the Texas Code of Criminal Procedure. A brief recess was taken, and appellant was given an opportunity to confer with his attorney. After conferring with trial counsel, appellant stated he understood the requirement that he would be required to register as a sex offender pursuant to Chapter 62. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(5).

The following day a punishment hearing was held, and during this hearing the complainant's teacher testified that on October 30, 2014, the complainant appeared sad and upset at school. The teacher asked the complainant what was wrong, and he repeatedly told her that his penis was hurting, that his uncle (appellant) made him do things to his penis, and that appellant told him to "shh." The school promptly contacted Child Protective Services (CPS), who picked up the complainant from school and took him to the Children's Advocacy Center for a forensic interview. The interview was recorded and admitted into evidence during the hearing as State's exhibit 3.

Detective Helen Taylor of the City of Wylie Police Department testified that she responded to the complainant's outcry and observed the forensic interview. She testified that the complainant, who was 15 years of age at the time of these events

and has Down's Syndrome, seemed to have "delayed" communication and developmental skills. But in his October 30, 2014 forensic interview, when talking about appellant, the complainant said things like "put it in my mouth" and "push it in my butt." Moreover, he used his body to show the forensic interviewer what happened with his hands, hips, and mouth. He described what happened as "gross," "nasty," "annoying," and "hurting," and told the interviewer appellant said things like "shh," "suck it," and "don't bite."

That evening Detective Taylor interviewed appellant. He told Taylor that the complainant had a habit of saying the word "pee-pee," and that the complainant had been talking about his "pee-pee" that morning. To get him to stop using the word, appellant "popped" him on his mouth and then (when that did not work) on his penis with his hand, on the outside of the complainant's clothes. Appellant was aware that there were previous occasions when the complainant had been caught masturbating, but appellant said the complainant had never made any allegations of abuse. At no point during the interview did appellant indicate he had done anything wrong, and he agreed to cooperate with the investigation.

Detective Taylor subsequently contacted U.S. Secret Service Special Agent Lonnie Falgout and requested his assistance. Falgout interviewed appellant, and Taylor observed this interview on video. Appellant eventually admitted to Special Agent Falgout that he committed an offense, and he provided a written statement to Falgout. In this written statement, which was admitted into evidence as State's

–7–

exhibit 5, appellant admitting to sitting the complainant on the bed, unbuttoning his pants, spitting in his hand, and masturbating him for sixty to ninety seconds to "teach" him.

Following that interview, Taylor spoke with appellant again, and this interview was audio recorded and admitted into evidence as State's exhibit 2. Before Special Agent Falgout left the room, he had appellant read his written statement aloud, and appellant confirmed that he had written the statement and it was the "100 percent truth." Appellant told Taylor that he was trying to "teach" the complainant, but he admitted the contact was inappropriate. Appellant also admitted that he initially lied to Detective Taylor because he did not "want CPS involved with his family." Appellant was arrested following this interview, and he was released on bond with condition that he not be around or within 500 feet of the complainant or any other minors.

Taylor further testified that, around December of 2014, the complainant told his teachers that appellant was at home during an incident where appellant's wife Lydia slapped the complainant. Additionally, on January 23, 2015, school personnel alerted CPS that the complainant and Lydia attended a school basketball game on January 20th, and that appellant was also there, sitting one row and seven people down from them.

Appellant called several witnesses to testify on his behalf, including Lydia, his mother, his son, sister-in-law, the complainant's sister, and a family friend.

These witnesses generally testified that appellant was a good father, that he loved the complainant as his own son, took care of his family, and that he deserved probation.

Appellant also testified in his defense. He told the court he was forty-two years of age and had been married to Lydia for twenty-one years. He believed he was a good father and role model. He explained that he and his wife had taken in the complainant and his sister to live with them, and that he loved the complainant and treated him like his own son. Appellant testified that the complainant had "talked about his pee-pee for years," and that this had been "an issue" with the complainant even before he was placed into the care of appellant and his wife.

On the morning of the offense, appellant was in the shower and he noticed the complainant standing in the doorway. The complainant was wearing his school uniform (a Polo shirt and shorts) but his penis was out and erect. Appellant got out of the shower, sat the complainant down on the bed, and started asking him why his penis was out and erect and what the complainant was thinking. Appellant said the complainant's speech was "broken," and he was unable to answer appellant. The complainant said only that "[m]y pee-pee is out" and to "look at my pee-pee." Appellant testified that he was trying to figure out what the complainant "was doing," i.e., whether he was "just playing with himself" or if he got erect watching appellant in the shower. Appellant testified that he grabbed the complainant's penis and asked him, "[W]ere you in there doing this?" He said that he held onto the

complainant's penis for only "a few seconds," not sixty to ninety seconds like he said in his written statement. He stopped when he realized this "show-and-tell" "was not working." He denied he had ever sucked on the complainant's penis or that the complainant had ever sucked on his penis.

Appellant acknowledged he had pleaded guilty to "sexual contact" and that he was "guilty of that, but not in the manner that the State is trying to say that I did it." He also testified that his actions were not malicious and that "it wasn't because I wanted to get sexually aroused or to sexually arouse him." He told the trial court he should get probation and explained why he thought probation was the appropriate punishment. On cross-examination, appellant testified he was not trying to teach the complainant how to masturbate when he touched the complainant—he was merely trying to gain an understanding of what the complainant was doing. He insisted he "didn't sexually abuse" the complainant. When questioned about telling Detective Taylor during their first interview that nothing sexual had happened between him and the complainant, appellant testified he still felt "that nothing sexually happened." Later, when questioned about sexually assaulting a child, appellant again said, "I didn't sexually assault him." Appellant also testified that he now realized he had made a mistake but, at the time, he "didn't think it was a mistake to do that" because he "was trying to be a parent" and "get an understanding from the kid." After hearing the evidence and arguments from both sides, the trial court found appellant guilty of indecency with a child by contact and sentenced him to ten years

in prison.

Appellant argues "it was abundantly clear" from his testimony that he "did not have the requisite sexual intent to commit the offense," and, as a result, "for trial counsel to not request to withdraw his plea was deficient." He also argues that "[c]ounsel's failure resulted in [a]ppellant being sentenced for an offense he did not have the requisite intent to commit." He cites *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005), claiming the record contains all the information we need to make a decision. But *Andrews* involved trial counsel's failure to object to the prosecutor's misstatement of the law regarding sentencing during the prosecutor's closing argument. *See id.* at 103. The Court of Criminal Appeals concluded that "[u]nder the extremely unusual circumstances of this case, the record contains all the information that we need to make a decision," and that there could be no reasonable strategy for not objecting to the prosecutor's misstatement of law. *Id.* "Thus, counsel's reasons, if any, were unnecessary to resolve the ineffective assistance of counsel claim." *Goodspeed v. State*, 187 S.W.3d 390, 394 (Tex. Crim. App. 2005) (Price, J., concurring) (discussing *Andrews*). The situation in the present case is altogether different: The "extremely unusual" circumstances that were present in *Andrews* are not found in this case, which clearly does not involve a failure to object to a prosecutor's misstatement of law; therefore, *Andrews* is distinguishable.

But in a far more analogous case, *Mallett v. State*, 65 S.W.3d 59 (Tex. Crim. App. 2001), the Court of Criminal Appeals overruled an ineffectiveness claim

–11–

asserting Mallett's trial counsel should have moved to withdraw a guilty plea after Mallett testified he did not intend to commit the offense charged. *See id*. at 63. Before overruling the issue, the court noted that during the plea hearing Mallett explained he was pleading guilty because the charges were true, that his plea was freely and voluntarily made, and that it was his decision to enter the plea. *Id*. at 64. Furthermore, the court explained that the trial court properly admonished Mallett, that the record did not establish that Mallett wanted to withdraw his plea, and that "even if Mallett's testimony was read as a protestation of innocence, all sorts of considerations may motivate a guilty plea." *Id*. The court also stated that the record was silent regarding why Mallett's attorney did not move to withdraw the plea and that his counsel "may have felt that he could not rebut the recitations in the record that Mallett's plea was freely and voluntarily entered." *Id*.

Those same considerations, including the absence of a fully developed record for appellant's ineffectiveness claim, are present in this case and likewise persuade us appellant has failed to overcome the presumption his attorney's representation fell within the wide range of reasonably professional assistance. Like the defendant in *Mallet*, appellant has failed to show his trial counsel was deficient. Accordingly, we overrule appellant's first issue.

### 2. Voluntariness of Appellant's Plea

In his second issue, appellant argues his plea of guilty was involuntary because he did not have a complete understanding of the charges against him.

The presence of article 26.13 admonitions in the record creates a prima facie showing that substantial compliance occurred and the plea was both knowing and voluntary. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam). The burden then shifts to the defendant to show he did not understand the consequences of his plea and that he was harmed or misled by the admonitions. *Id.* "A defendant's sworn representation that his guilty plea is voluntary 'constitute[s] a formidable barrier'" to establishing a plea was not voluntary, and that the defendant was harmed. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). Moreover, substantial compliance with article 26.13 is sufficient unless the defendant shows he did not understand the consequences of the plea and was harmed or misled by the admonishments given. TEX. CODE CRIM. PROC. ANN. art. 26.13(c); *Martinez*, 981 S.W.3d at 197.

Appellant does not claim the trial court improperly admonished him according to article 26.13, nor that he did not understand the consequences of his plea, but he contends his plea was involuntary because he did not have a full understanding of the requisite mental state required to be found guilty of indecency with a child by contact. Appellant cites *Henderson v. Morgan*, 426 U.S. 637 (1976) to support this argument, but his reliance is misplaced. The case can be distinguished on a number of facts, including that the defendant's counsel in that case did not advise his client of the charges against him before the appellant pleaded guilty, and the defendant

–13–

functioned at an "unusually low mental capacity." *Id.* at 640, 647. Therefore, the record did not support that the defendant understood the charge to which he was pleading guilty. *Id.* at 646.

The situation in the present case is quite different. As we explained, the trial court admonished appellant according to article 26.13. Appellant was admonished on the nature of the charges against him and the range of punishment for the offense, the potential immigration consequences, and that Chapter 62 applied. The trial court inquired into whether appellant was competent to enter his plea, and whether he was pleading freely and voluntarily. Furthermore, the court expressly found appellant entered his plea freely and voluntarily. Appellant acknowledged during his testimony that he understood the charge against him, and he admitted he was guilty of sexual contact.

Appellant has not carried his burden of showing he did not fully understand the charge against him or the consequences of his guilty plea. The fact that appellant testified he did not act with a sexual intent does not show he lacked an understanding that the offense to which he was pleading guilty required an intent to arouse or gratify the sexual desire of any person. *See* TEX. PENAL CODE ANN. § 21.11. "Due process of law is not denied by a conviction based on a plea of guilty that is accompanied by 'a strong factual basis for the plea demonstrated by the State and [a defendant]'s clearly expressed desire to enter it despite his professed belief in his innocence.'" *Mendez v. State*, 138 S.W.3d 334, 344 (Tex. Crim. App. 2004) (quoting *North*

*Carolina v. Alford*, 400 U.S. 25, 38 (1970)).  The record in this case includes both a strong factual basis for the plea and that appellant persisted in his guilty plea even after denying he acted with a sexual intent.  Given the record in this case, appellant has not shown his plea was involuntary or that the trial court erred with respect to its handling of the plea.  We overrule appellant's second issue.

We affirm the trial court's judgment.


/Lana Myers/
LANA MYERS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)
191348F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DETRICK BLAIR DEAN, Appellant

No. 05-19-01348-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas Trial Court Cause No. 199-82171-2015.

Opinion delivered by Justice Myers. Justices Nowell and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is

**AFFIRMED**.

Judgment entered this 22nd day of December, 2020.